IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD BURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:13-cv-794-NJR-DGW |
| | ) | |
| J. BERNER, RICK HARRINGTON, | ) | |
| D. DUNN, FUENTES, SAM NWAOBASI, | ) | |
| ANGELA CRAIN, PAYNE, LATANYA | ) | |
| WILLIAMS, JANE DOE #1, JOHN DOE | ) | |
| #2, and JOHN DOE #10[1] | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B),

Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a).  Pending before the Court are the

Motions for Summary Judgment on the Issue of Exhaustion (Docs. 67 and 68) filed by

Defendants Joshua Berner, Angela Crain, [2] Daniel Dunn, Richard Harrington, Vicki Payne,

Samuel Nwaboasi, Fe Fuentes, Latanya Williams, and Plaintiff's, Ronald Burt's,  Memoranda in

Opposition (Docs. 80 and 81).  For the reasons stated below, it is **RECOMMENDED** that the

---

[1] The docket sheet in this matter erroneously reflects that John Doe # 10 was terminated on
September 27, 2013.

[2] Defendant Crain was an employee of Wexford Health Sources and the Illinois Department of
Corrections during the relevant time period.  Hence, she is represented by both the Illinois
Attorney General (which represents state employees) and the law firm Sandberg, Phoenix (which
generally represents employees of Wexford before this Court).

Motions be **GRANTED IN PART** and **DENIED IN PART** and that the Court adopt the following findings of fact and conclusions of law.

## INTRODUCTION

Plaintiff, who is currently incarcerated at the Menard Correctional Center ("Menard"), filed a Complaint on August 5, 2013 alleging that various Defendants were deliberately indifferent to his medical condition and that they conspired to prevent him from receiving adequate medical treatment, amongst other things (Doc. 1). Plaintiff specifically alleges that the lack of medical treatment exacerbated a back and neck condition[3] causing him to suffer from chronic pain and mental anguish. He also fears the continued lack of treatment may lead to paralysis. Pursuant to the merits review conducted by the District Court (Doc. 13), Plaintiff has been permitted to proceed on the following claims:

> Count 1: Eighth Amendment claim for deliberate indifference to Plaintiff's back and neck injuries and chronic pain against Defendants Berner, Harrington, Dunn, Fuentes, Nwaobasi, Crain, Payne, Williams, Doe #1, Doe #2, and Doe #10.

> Count 4: Civil conspiracy to deprive Plaintiff of adequate medical treatment against Defendants Berner, Dunn, Fuentes, Nwaobasi, Crain, Payne, Williams, Doe #1, Doe #2, and Doe #10.[4]

With the exception of Defendant Williams, who is employed at the Stateville Correctional Center ("Stateville"), and John Doe #10, the remaining defendants are currently employed at Menard.

On June 27, 2014, a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held in which Defendants appeared by counsel and Plaintiff appeared by counsel and in person (Doc. 98). Extensive testimony and argument was presented by all parties. While

---

[3] Plaintiff alleges he suffers from degeneration of his cervical spine as a result of an unspecified pre-existing injury (Doc. 1, p.3).

[4] In its Order, the District dismissed Counts 2, 3, and 5 and various John Doe Defendants. The Court also indicated that Defendant Harrington is only retained in this suit in order to perfect any injunctive relief that may be awarded.

Plaintiff filed numerous grievances during his incarceration, all parties agree that the grievances dated August 23, 2010 and October 23, 2012 are central to the issue of failure to exhaust administrative remedies, the issue currently before the Court (Doc. 92, pp. 7-8).  Plaintiff further stipulated that Defendants Fuentes and Williams should be dismissed without prejudice (Doc. 92, p. 73-77).[5]

### FINDINGS OF FACT

According to Plaintiff, he has suffered, and continues to suffer, from severe and chronic back and neck pain for a number of years.  He has complained about his condition to prison personnel from at least 2010, verbally and through notes, letters, and grievances, when he was housed at both Menard and Stateville.[6]  As noted above, all Defendants except Williams and John Doe # 10 were employed at Menard during the relevant time period.  Defendants Nurse Williams, Dr.  Nwaobasi, Dr. Fuentes, Medical Director Crain, Menard Intake Nurse Jane Doe #1, Menard Medical Director John Doe # 2, and Stateville Medical Director John Doe # 10 are medical personnel.  Defendants Correctional Officer Berner, Sergeant Dunn, Counselor Payne, and Warden Harrington are prison personnel and administrators.  As noted above the two grievances that are relevant, and stipulated to as being the only relevant grievances, are dated August 23, 2010 and October 23, 2012.  Both grievances were filled out while Plaintiff was housed at Menard.

---

[5] The record in this case contains other grievances including ones dated August 1, 2011 (Doc. 1, p. 14) and May 16, 2013 (Doc. 69-2, pp. 29-32).  Plaintiff does not argue that these grievances are relevant to the issue of exhaustion and that have not been considered by this Court as exhausting the claims made herein.

[6] Plaintiff is allegedly classified as a high escape risk and is frequently transferred between Menard and Stateville.   It appears from the record that Plaintiff was transferred on a yearly basis, being housed at Stateville in 2009, Menard in 2010, Stateville in 2011, Menard in 2012, and so on.  The record is not clear as to the specific day of Plaintiff's transfers.

The August 23, 2010 grievance generally complains of the excessive lockdowns occurring at Menard and how these lockdowns affect prison life and living conditions (Doc. 80-3, pp. 1-4). Of relevance are the last few sentences in the grievance:

> Some of us suffer from medical issues. My knees, my neck, my back are all messed up. I'm not even being given the pain medication needed for my neck spinal scoliosis. I was diagnosed with years ago & now I can't even get my pain pills & no movement does create health issues.
>
> (*Id.* p. 2).

For relief, Plaintiff vaguely indicates: "We need proper nutrition & medical problems due to no movement back neck knees" (*Id.* p. 1). A counselor responded to the grievance on August 30, 2010, only referencing Plaintiff's complaints about lockdowns (*Id.*). A grievance officer provided a recommendation of denial on September 9, 2010, again only referring to the complaint about lockdowns, to which the warden agreed (*Id.* p. 3). There is no dispute that Plaintiff appealed to the Administrative Review Board (ARB). In responding, the ARB references the complaints about lockdowns and also appears to refer to other grievances regarding the same topic (*Id.* p. 4).[7] The ARB also makes no mention of Plaintiffs' medical concerns. At no point during the grievance procedure was the grievance rejected for failing to name a particular person or for any procedural defect.

The October 23, 2012 grievance concerns Plaintiff's medical care (Doc. 80-2, pp. 1-2). Plaintiff states:

> I've put in (3 requests) to the medical doctor to get my motrin/Ibuprofen renewed, . . . .If I'm not gonna be given the proper meds/treatment then give me the proper surgery to end the chronic pain I'm feeling daily. My x-rays show where my neck is bowed & where it was hurt badly. I'm in pain everyday  & neck exercises do

---

[7] Plaintiff also submitted grievances dated August 11, 2010 and August 20, 2011 that only concerned the lockdowns (Doc. 69-1, pp. 10-13). These grievances generated identical responses from his counselor on August 30, 2010 and were reviewed by the grievance officer on September 2, 2010, the same date as the August 23, 2010 grievance.

> not help me. . . . This staff is deliberately and blatantly denying me my medication. I told them in April when I got here when asked by healthcare staff if I was on medication, I told them yes & was only given my lubrisoft lotion. I am in ongoing continuous pain.

(*Id.*).

A counselor responded on January 14, 2013[8] by referring to a response signed by Defendant Angela Crain (*Id.* p. 3). Defendant Crain outlined Plaintiff's medical care from November 2, 2012 and indicated that Plaintiff's next appointment would be around the first week of February, 2013. The record does not contain a response to the grievance from the warden or the ARB. However, Plaintiff, in a May 17, 2014 declaration, indicates that he submitted the grievance to the grievance officer within a few days of the January 14, 2013 response (Doc. 80-1, p. 2). He further states that he did not receive a response (*Id.*). This Court finds that Plaintiff is credible and that he did appeal the October 23, 2012 grievance to the grievance officer but that he did not receive a response. [9]

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are

---

[8] The grievance was received by the counselor (Defendant Payne) on October 25, 2012.

[9] Attached to the Complaint are various letters authored by Plaintiff that are directed to the healthcare unit (Doc. 1, pp. 15, 19-24). These letters seek various medical care and are dated from October 11, 2012 to May 19, 2013. There has been no argument or showing that these letters would serve to exhaust Plaintiff's administrative remedies.

in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting

*Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE tit. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).   The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).   An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

The Seventh Circuit Court of Appeals recently has found that "[a] Pavey hearing serves a limited but important role: it helps the judge decide whether the court or the prison is the proper forum for the prisoner's grievance," prior to "adjudication on the merits." *Wagoner v. Lemmon*, 2015 WL 449967, at *1 (7th Cir. 2015).  The sequence the Seventh Circuit has developed when failure to exhaust has been raised as an affirmative defense is:

> "(1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion [the judge] deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; or (b) although he has no unexhausted administrative remedies, the failure to exhaust was innocent…; or (c) the failure to exhaust was the prisoner's fault, in which even the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery…"

*Pavey*, 544 F.3d at 742.   Thus, the actual merits of the claims giving rise to the suit are not presented: the focus is on whether a prisoner exhausted the administrative remedies available to him.  *Id*.  *But see Fluker v. County of Kankakee*, 741 F.3d 787, 792-793 (7th Cir. 2013) (noting that no case or statute "prohibits a district court's progression from the PLRA defense to the merits if the situation properly calls for it").   Enforcement of the exhaustion requirement is accomplished by dismissal of the suit, without prejudice.  *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir 2004).

## CONCLUSIONS OF LAW

### August 23, 2010 Grievance

Defendants argue that the August 23, 2010 grievance, although fully appealed, involves only lockdown issues, fails to name any Defendants, is not relevant to Plaintiff's claims because it is outside the time period stated in the Complaint, and is outside of the statute of limitations (Doc. 69, pp. 13-14).

The main thrust of this grievance was Plaintiff's dismay at the number of lockdowns occurring at Menard and how they affect his life, including his ability to acquire medical attention and medication.   In responding to the grievance, the prison and ARB merely referred to his complaints about the lockdowns and did not specifically address the complaints about the consequences of those lockdowns.   While it is immaterial how the ARB interprets the subject matter of the grievance, the general language on their form requires only a "Brief Summary of Grievance."   Plaintiff not only grieved the frequency of the lockdowns, but also the fact that he was suffering from pain due to not receiving his medication.   Plaintiff also, albeit inartfully, requested relief for his "medical problems."   This grievance, then, referenced Plaintiff's pain and the lack of medication.   Such statements are sufficient to notify the prison that Plaintiff is

complaining of the lack of medication, at least during lockdowns.  Thus, Plaintiff sufficiently notified prison authorities of his pain and lack of medication and invited them to take corrective action.

Plaintiff's failure to name a particular Defendant also is not fatal to a claim.  The Illinois Administrative Code provides that "[t]he grievance shall contain factual detail regarding each aspect of the offender's complaint . . . and the name of the person who is the subject of or otherwise involved in the complaint.  This provision does not preclude an offender from filing a grievance when the names of the individuals are not known, but the offender must include as much descriptive information about the individual as possible."  *Id.* TIT. 20, § 504.810(a).  The August 23, 2010 grievance did not name any person nor did Plaintiff provide a description of the persons involved.  The grievance form itself, however, does not direct an inmate to name a particular person.  In *Maddox v. Love*, 655 F.3d 709, (7th Cir. 2011), the Seventh Circuit addressed a similar circumstance: the defendants argued a grievance filed was insufficient because it failed to name or describe the wrongdoers.  The Seventh Circuit rejected the argument, finding that the grievance form only asked for a brief description, the prison responded to the grievance on the merits, and the grievance sufficiently notified the prison of the complaint.  *Id.* at 722-721.  In particular, the Court stated that the failure to name a defendant "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement."  *Id.* at 722.

Similarly, Plaintiff in this matter filed a grievance which required only a "brief summary," he followed the appeal process to its conclusion, and the grievance was rejected based on its merits.  While neither the prison nor the ARB addressed Plaintiff's medical claims, they were certainly notified that Plaintiff was complaining about not receiving his medication.

The prison and the ARB's failure to address that issue does not lead to the conclusion that Plaintiff failed to exhaust that claim.  "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the [prison authorities] and inviting corrective actions, and *defendants cannot rely on the failure to exhaust defense*." *Maddox*, 665 F.3d at 722 (emphasis added); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). *See also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) *Ford*, 362 F.3d at 398 (if a prisoner's grievance is decided "without invoking a forfeiture doctrine, the [ARB] established that the prisoner exhausted his state remedies").

It should be noted that Defendants could not be at a loss to determine what medical providers or others would have denied Plaintiff medication.  When Plaintiff complained about lack of medical care in his October 23, 2012 and May 16, 2013, his counselor's response was to see a response from "HCU."  Attached to that response is then a memorandum from Angela Crain, the Nursing Supervisor, who presumably looked at Plaintiff's medical records, determined who was treating him and provided a detailed response about what medical provider Plaintiff visited and when his next visits would be – *even if the grievance itself does not name a particular medical provider*.   It follows then, that if the prison did not require an inmate to provide the name of an offending employee in a grievance and responded to that grievance on the merits, it cannot now claim that the grievance fails to exhaust a claim based on that grievance.  *Maddox,* 655 F.3d at 721 ("[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust *only if prison administrators explicitly relied on that shortcoming*." (quoting *Conyers*, 416 F.3d at 585 (emphasis added))).  Stated another way, if a grievance is answered on the merits without denying it for not following procedure, the grievance's purpose of alerting the prison administration of a deficiency and

inviting a corrective action has been met, precluding Defendants from relying on the failure to exhaust as a defense.  *Id.*  The alleged deficiency in Plaintiff's grievances should have been addressed through the grievance process.  Consequently, unless prison officials respond to a procedural defect instead of the grievance's merits, "the federal court infers that the parties must have done whatever the tribunal deemed necessary to permit a reliable decision on the merits." *Id.* (quoting *Ford*, 362 F.3d at 397-98).

Defendants next argue that that Plaintiff's Complaint does not reference a date prior to 2011 and that the August 23, 2010 grievance is accordingly irrelevant (Doc. 69, p. 14).  In a related argument, Defendants raise a statute of limitations defense, claiming the statutory period to file civil suit has expired as to claim made in the August 23, 2010 grievance. To the extent that it is relevant to the issue of exhaustion, the Seventh Circuit has held the statute of limitations is tolled during the grievance process.  *Gomez v. Randle*, 680 F.3d 859 (7th Cir. 2012); *Walker v. Sheehan*, 526 F.3d 973, 978 (7th Cir. 2008); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).  Plaintiff responds, and this Court agrees, that Plaintiff's medical condition is arguably a continuing objectionable condition that did not require the filing of multiple grievances.  "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing."  *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).   The Complaint cannot be construed so narrowly as to preclude evidence of Plaintiff's ongoing neck and back pain from being considered.  Plaintiff has sufficiently supplemented the record evidencing his continuing rights violations for the purposes of deciding the issue of failure to exhaust.[10]

---

[10] This Court is not arriving to a conclusion on the merits of 8th Amendment claims, merely drawing a corollary between Plaintiff's Complaint and the August 23, 2010 grievance as it relates to the issue of exhaustion.

While Plaintiff has two years to file suit, this Circuit, in *Turley,* held that prisoners are not required to file multiple grievances regarding the same issues, as long as the condition is ongoing. *Id.*, 729 F.3d at 650. Thus, "deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff, 258 Fed.Appx.* 3, 5–6 (7th Cir. 2007) (citing *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001)).  A plaintiff is allowed to "reach back to the point where a defendant "learned that [the inmate] had a condition warranting medical attention yet unreasonably refused to provide that attention." *Id.* (quoting *Heard, 253 F.3d at 318*).  An inmate's initial grievance that has "served its function of alerting the state and inviting corrective action" is sufficient.  *See Id.; Riccardo,* 375 F.3d at 524; *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002).  An inmate is not required to continuously re-file a new grievance each time medical treatment is not provided.  *See Id.*  As it is clear from Plaintiff's attached medical records (Doc. 69-11), his complaints about his back and neck are ongoing.   To further evidence this ongoing issue, Plaintiff has filed grievances complaining of neck and back pain in addition to the grievances at issue in this case.[11] Thus, every new occurrence of the persistent issues regarding the treatment of Plaintiff's back and neck condition renews the statutory timeframe.

In sum, this Court finds that the August 23, 2010 grievance exhausts claims that, from on or around June 23, 2010, Plaintiff was being denied medication for his neck and back condition and pain.[12]  As to the particular Defendants that are related to this grievance and the subsequent

---

[11] Grievances in which Plaintiff has complained of ongoing neck and back pain are August 1, 2011 (Doc. 1, p. 14); October, 2012 (Doc. 1, p. 16), and May 18, 2013 (Doc. 69- 2, pp. 29-32).

[12] As noted above, regulations require an inmate to file a grievance within 60 days from the complained of event or incident.

claim in this Court, only persons who were responsible for failing to provide plaintiff medication on or around June 23, 2010 to August 23, 2010 and who continued to fail to provide him medication should be Defendants in this suit.  Any Defendant who *began* treating Plaintiff after August 23, 2010 would not be an appropriate Defendant (unless he/she is the subject of the October 23, 2012 grievance discussed below).

Unfortunately for Plaintiff, his Complaint does not indicate who deprived him of medication in 2010 (and going forward), whether that person was a correctional officer or medical personnel.  There is also no indication in his briefs in response to summary judgment as to which one (or more) of Defendants may have been responsible.  If any Defendant is the subject of this grievance, he/she would necessarily be employed at Menard – thus John Doe # 10 (the Medical Director at Stateville) would not be the subject of this grievance.

As to Count 4, civil conspiracy, nothing written in this grievance, regardless of how liberally construed, alludes to any allegation of a conspiracy concerning deliberate indifference. While a Plaintiff does not have to write a grievance with the same specificity as is required by filing a suit, its purpose is to allow prison officials to correct a shortcoming in the system. *Riccardo*, 375 F.3d at 524.  In this grievance, Plaintiff complains, "I'm not even being given the pain medication needed for my neck spinal scoliosis… and now I can't even get my pain pills." In determining whether this is sufficient to allege a conspiracy, there must be enough information provided to put the institution on notice that several of its employees were conspiring together to prevent Plaintiff from receiving adequate medical treatment.   No such assertion is made in this grievance.

In the Complaint, Plaintiff alleges he has asked for medical help by asking Defendants Berner, Payne, and Dunn for assistance and claiming Defendants refused to do anything (Doc. 1,

p. 7).  These denials of treatment occurred from April 2012 through June of 2013. *Id*.  As the August 23 grievance was filed in 2010, it will preclude Defendants Berner, Payne, and Dunn from being considered.

Based on the allegations in the current Complaint, then, this Court cannot find that the August 23, 2010 grievance exhausted a claim for deprivation of medication beginning on or around June 23, 2010 as to any of the named Defendants.

*October 23, 2012 Grievance*

As indicated above, this Court finds that Plaintiff appealed the October 23, 2012 grievance to the warden at Menard but that he failed to respond.  This failure to respond rendered the grievance process unavailable to Plaintiff at that time.  *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir.2005) ("grievance received no response; prisoner waited between 1 and 4 months before filing suit"); *Lewis*, 300 F.3d at 829 ("holding that a prison's failure to respond to a grievance would make remedies "unavailable" and thus the prisoner would have exhausted").    In this grievance, Plaintiff complained that he requested pain medication from the "medical doctor" and that he requires surgery from his neck and back condition/pain.  The grievance also indicated that he told "health care staff" in April (in 2012) that he had been prescribed pain medication and that he did not receive his medication.  According to a response submitted by Defendant Crain, Plaintiff's doctor at that time was Defendant Nwaobasi (Doc. 1, p. 18).  This grievance, then, would exhaust Count 1 as to Dr. Nwaobasi and intake Nurse Jane Doe # 1.  No other claim against any other Defendant is exhausted with this grievance.   In particular, this Court finds that the grievance does not exhaust claims as to any of the correctional officers (Berner, Dunn, and Payne), Defendant Crain (who's only involvement in Plaintiff's claim is her response to his

grievances), or John Doe ## 2 and 10, the Medical Directors of Stateville and Menard.   This grievance also cannot be read to assert any kind of conspiracy claim.

In light of the arguments made in the parties' briefs and at the *Pavey* hearing, some additional observations are required.   In an all too frequent response to summary judgment motions for failure to exhaust administrative remedies, prisoner plaintiffs allege missing or lost grievances and this Court must make a credibility determination. Ordinarily, the quintessential "he said, she said" dispute is not to be determined at summary judgment; however, during *Pavey* Hearings, a judge is permitted to make a credibility determination in deciding whether a plaintiff exhausted a missing or lost grievance.   In the case at bar, this Court finds Plaintiff Burt to be credible.

During Plaintiff's many years of incarceration he has filed no less than twenty grievances, with nine being appealed to the ARB.   Plaintiff asserts that during the time relevant to the grievance at issue, Menard was on lockdown and he was unable to place grievances in the correct mailbox.   According to the deposition of Defendant Payne, it is standard for prisoners to leave grievances between the bars of their cell and, sometime during the night, a correctional officer will collect the mail and place it in the correct box (Doc. 80-4, pp. 10-11). Plaintiff has also attached a Declaration attesting to following lockdown procedures at Menard (Doc. 80-1).

In an attempt to discredit Plaintiff, Defendants suggest that Plaintiff bears the burden of producing documentary or other evidence (other than his own testimony) that a grievance was ignored.   Thus, Defendants attempt to distinguish *Dole* by focusing on Dole's actions of filing a grievance after not receiving a response from his Grievance Officer. *Dole*, 438 F.3d at 807 (finding an unanswered grievance exhausted).   Plaintiff was not given any advice on how to proceed in dealing with an unanswered grievance, which cannot be the fault of the Plaintiff.

There is nothing in Illinois' Administrative Code to indicate the process an inmate is to undertake in the eventuality a grievance goes missing.  (Doc. 80-6, pp. 46-47).  Plaintiff testified that he told his grievance counselor, Vicki Payne, on numerous occasions about missing grievances; Defendant Payne corroborates this in her deposition. (Doc. 80-4, pp. 39-40).  Plaintiff also did what he thought was best and testified that after a significant amount of time without response from the Grievance Officer, he sent the grievance directly to the ARB (Doc. 92, p. 48).

After telling Grievance Counselor Payne about missing grievances, Plaintiff was never advised on how to proceed in dealing with the missing grievances, nor does Menard have a procedure to handle lost or missing grievances (Doc. 92, p. 67, L 12-15; Doc. 80-4, p. 16).  A prisoner can only exhaust the remedies available to him, prison officials failing to respond make those remedies unavailable.  The Seventh Circuit refuses to interpret the PLRA in a manner as to "permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis*, 300 F.3d at 833 (7th Cir. 2002) (quoting *Goodman v. Carter*, 2001 WL 755137 at 3 (N.D. Ill. 2001)).  Moreover, there is no requirement, either in the Administrative Code or the law that would require an inmate to do anything more than submit his grievance to the prison in a manner in which they instruct.  Arguing, then, that an inmate must do more than what the Administrative Code requires or more than what the law requires in order to prove exhaustion is a faulty argument -- Plaintiff can only do as much as the system allows.

RECOMMENDATION

For foregoing reasons, it is **RECOMMENDED** that Defendants' Motions for Summary Judgment on this Issue of Exhaustion (Docs. 67 & 68) be **GRANTED IN PART and DENIED IN PART**.  In particular, this Court RECOMMENDS that:

1.   Defendants Fuentes and Williams be **DISMISSED WITHOUT PREJUDICE** pursuant to stipulation.

2.   Defendants Berner, Dunn, Crain, Payne, John Doe # 2 and John Doe # 10 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

3.   Count 4 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

4.   Count 1 proceed only as to Defendants Nwaobasi and Jane Doe # 1.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 20, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**