IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD BURT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-794-NJR-DGW |
| | ) |
| JOSHUA BERNER, | ) |
| RICK HARRINGTON, DANIEL DUNN, | ) |
| FE FUENTES, SAM NWAOBASI, | ) |
| ANGELA CRAIN, VICKI PAYNE, | ) |
| LATANYA WILLIAMS, JANE DOE 1, | ) |
| JOHN DOE 2, and JOHN DOE 10, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Amended Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 99), recommending that the motions for summary judgment on the issue of exhaustion filed by Defendants Joshua Berner, Angela Crain, Daniel Dunn, Richard Harrington, Vicki Payne, Samuel Nwaobasi, Fe Fuentes, and Latanya Williams (Docs. 67, 68) be granted in part and denied in part. The Amended Report and Recommendation was entered on February 25, 2015, and Plaintiff Ronald Burt filed a timely objection (Doc. 100).

Because a timely objection was filed, the undersigned must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires

the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788.

For the reasons stated below, the Court overrules Burt's objections and adopts the Report and Recommendation of Magistrate Judge Wilkerson.

## BACKGROUND

Plaintiff, Ronald Burt, is an inmate in the custody of the Illinois Department of Corrections. He suffers degeneration of his cervical spine as a result of an unspecified injury, which causes severe and chronic neck and back pain (Doc. 1, p. 3; Doc. 80-1). Burt filed this action on August 5, 2013, alleging Defendants were deliberately indifferent to his neck and back issues and engaged in a civil conspiracy to deny him adequate medical treatment (Doc. 1; Doc. 13).

In his complaint, Burt alleges that he was denied adequate medical care on various occasions from mid-2011 through August 2013 at both Stateville Correctional Center and Menard Correctional Center (Doc. 1; Doc. 80, p. 2; Doc. 80-1; *see* Doc. 80-3). It appears from the record that Burt was incarcerated at Stateville from February 2011 to April 2012, at which time he was transferred to Menard, where he remained for most of

2012 and 2013.¹ Two of the remaining Defendants are employees at Stateville: Latanya Williams is a physicians' assistant, and John Doe #10 was the Medical Director/Doctor at Stateville between February 2011 and April 2012 (Doc. 1, pp. 2, 5). The other nine Defendants are employees at Menard. Richard Harrington is the warden. Samuel Nwaobasi and Fe Fuentes are physicians. Angela Crain is a nurse. Vicki Payne is a correctional counselor. Joshua Berner and Daniel Dunn are correctional officers. Jane Doe #1 is the intake nurse who examined Burt in April 2012 when he was transferred to Menard (Doc. 1, pp. 2, 5).² And John Doe #2 was the Medical Director/Doctor at Menard during October and November 2012 (Doc. 1, pp. 2, 6).

In April 2014, Defendants, with the exception of the Jane and John Does, filed motions for summary judgment arguing that Burt failed to exhaust his administrative remedies prior to filing suit (Docs. 67, 68). As required by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on the issue of exhaustion on June 27, 2014 (Doc. 90). At the hearing, Burt's attorney stipulated to the dismissal of Dr. Fe Fuentes and Latanya Williams (Doc. 92, p. 76–77).

Following the hearing, Magistrate Judge Wilkerson issued a Report and Recommendation (Doc. 96). Five days later, he issued the Amended Report and Recommendation currently before the Court (Doc. 99). Magistrate Judge Wilkerson

---

¹ Neither party provided the Court with an exact history of where Burt was housed at all times relevant to this lawsuit. The Court was able to piece together a timeline, however, using his grievances and medical records. In August 2010, Burt was housed at Menard (*see* Doc. 80-3). In February 2011, he was transferred to Stateville (*see* Doc. 69-11, p. 12). Approximately fourteen months later, in April 2012, he was transferred back to Menard (*Id.* at p. 6). In June 2013 and September 2013, he was housed at Stateville for a couple of weeks but then sent back to Menard (*Id.* at pp. 23, 24, 32, 33).

² Based on the relevant medical records, it appears that the intake nurse is not a woman, but a man by the name of Chad Frierdich (Doc. 69-11, p. 6).

found, and the parties agreed, that there were two grievances relevant to Burt's surviving claims: one dated August 23, 2010, and another dated October 23, 2012 (Doc. 99, p. 3). In short, Magistrate Judge Wilkerson concluded that the August 23rd grievance was insufficient to exhaust Burt's deliberate indifference claim as to any of the named Defendants, and the October 23rd grievance was sufficient to exhaust only Burt's deliberate indifference claim as to Defendants Samuel Nwaobasi and Jane Doe #1 (*Id.* at pp. 14–15, 16). He further concluded that neither grievance was sufficient to exhaust the conspiracy claim (*Id.* at pp. 14, 15).

Burt objects to the conclusion that the August 23rd grievance was insufficient to cover any of the named Defendants, and he argues that Magistrate Judge Wilkerson misapplied the law regarding exhaustion and the continuing violation doctrine (Doc. 100, p. 8). Burt also objects to the conclusion that the October 23rd grievance was sufficient to cover only two of the named Defendants (*Id.* at p. 11). Finally, Burt objects to the conclusion that neither grievance was sufficient to exhaust his conspiracy claim (*Id.* at pp. 3, 4, 15–16).

Below, the Court discusses with more depth the findings of fact, conclusions of law, and Burt's objections as they pertain to each grievance.

## DISCUSSION

### A. August 23, 2010 Grievance

This grievance was submitted while Burt was incarcerated at Menard. It generally complains of excessive lockdowns in the previous months and how these lockdowns affected prison life and living conditions (Doc. 80-3). In the last few sentences of the grievance, Burt also complained that he was not receiving his pain medication or the

movement required for his health conditions as a result of the lockdowns (*Id.*). It is undisputed that Burt properly followed every step in the grievance process with respect to this grievance (*see* Doc. 99, p. 4).

Magistrate Judge Wilkerson concluded, in pertinent part, that the August 23rd grievance was sufficient to put prison officials on notice of Burt's complaint that he had been denied pain medication for his neck and back (Doc. 99, pp. 10, 13). He further concluded that the failure to provide medication to Burt was a continuing violation, and therefore Burt did not have to continuously submit new grievances for each day that he was denied his medication (*Id.* at p. 13). Accordingly, the August 23rd grievance was sufficient to exhaust Burt's deliberate indifference claim against any Defendant who failed to provide medication to Burt between June 23 and August 23, 2010,[3] and did so again at some point thereafter (*Id.* at p. 14). It was *not* sufficient to exhaust as to any Defendant who began treating Burt after August 23, 2010 (*Id.*).

Magistrate Judge Wilkerson then analyzed which Defendants fell within those parameters. He concluded that the subjects of the grievance had to be employed at Menard; thus Defendant Williams and John Doe #10 were excluded because they were employees of Stateville (Doc. 99, p. 14). Defendants Berner, Payne, and Dunn were also excluded because they did not deprive Burt of his medication until April 2012, at the earliest (*Id.* at pp. 14–15). As for the other five Defendants—Warden Harrington, Dr. Fuentes, Dr. Nwaobasi, Angela Crain, Counselor Payne, and John Doe #2—nothing that Burt submitted to the Court indicated that they were responsible for the denial of

---

[3] The Illinois Administrative Code requires inmates to file a grievance within sixty days of the complained of event or incident. ILL. ADMIN. CODE tit. 20, § 504.810(a). Therefore, Magistrate Judge Wilkerson determined that the grievance covered complaints going back to June 23, 2010.

medication at any time from June 23 to August 23, 2010 (*Id.* at p. 14). Accordingly, the August 23rd grievance did not exhaust Burt's claim for deliberate indifference as to any of the named Defendants (*Id.* at p. 15).

Burt objects to the conclusion that the August 23rd grievance was insufficient to cover any of the named Defendants (Doc. 100, p. 8). He argues that Magistrate Judge Wilkerson misapplied the continuing violation doctrine to the facts of this case. Burt contends that due to the continuing nature of the violation, the August 23rd grievance served to exhaust his claims against all prison personnel who deprived him of medical care from June 23, 2010, until the continuing violation ended (*Id.* at p. 9). Because all of the named Defendants denied him medical care within that time period, the August 23rd grievance was sufficient to exhaust his claims against every Defendant (*Id.*). In other words, Burt argues that the August 23rd grievance was sufficient to cover *every* prison official at *every* institution who purportedly denied him *any* type of medical care for his neck and back pain at *any* time over the course of more than three years.

The Court disagrees with Burt; the continuing violation doctrine cannot be stretched that far. It is true that in the event of a continuing violation, an inmate "need not file multiple, successive grievances raising the same issue" so long as the first grievance gave the prison "notice of, and an opportunity to correct, [the] problem." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008); *Johnson v. Johnson,* 385 F.3d 503, 521 (5th Cir. 2004). But that principle of law has boundaries, and contrary to Burt's suggestion, it does not support "a blanket policy of

allowing previously submitted grievances to exhaust remedies for all similar and subsequent events." *Pinson v. St. John*, No. 1:10-CV-01832-RBP, 2013 WL 765639, at *1 n.4 (N.D. Ala. Feb. 25, 2013); *accord Johnson*, 385 F.3d at 521 n.13 ("We pause to observe that we do not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type."); *Garrett v. Stephens*, No. 2:13-CV-70, 2014 WL 8272281, at *4-5 (S.D. Tex. Oct. 1, 2014) ("[I]n *Johnson,* the Fifth Circuit specifically rejected the idea that a previously filed grievance could remain in perpetuity to exhaust future claims[.]")

Instead, relevant case law demonstrates that a previously submitted grievance will suffice to exhaust remedies for future events only if the prisoner remained in the same situation. That is, the exact same problem continued to reoccur where the staff had already been made aware of and given the opportunity to correct the problem. *See Howard v. Wade*, 534 F.3d at 1244 (where inmate filed a grievance complaining that he was at risk of sexual assault in the unit in which he was housed, it was sufficient to exhaust his administrative remedies for each incident where he was, in fact, assaulted up until his transfer out of the prison); *Parzyck*, 627 F.3d at 1218, 1219–20 (where plaintiff filed a grievance complaining that he had been denied a promised orthopedic consultation, he did not need to file a new grievance each time his subsequent requests were denied by a new official at the same prison while he was in the process of fully exhausting the first grievance).

Here, Burt is attempting to rely on a grievance submitted on August 23, 2010, during his first stint at Menard, in order to exhaust his remedies with respect to all

subsequent incidents of deliberate indifference. In that grievance, Burt complained about the deprivation of pain reliever due to lockdowns at Menard prior to that date. Accordingly, the grievance was sufficient to alert Menard officials to the problem and to provide them the opportunity to resolve it, and Burt was not required to submit additional grievances each subsequent time he was denied pain reliever at Menard. Once he was transferred out of Menard to Stateville on February 18, 2011, however, he no longer remained in the same situation.

At that point, the prison officials at Menard who purportedly denied him pain reliever ceased to have any control over (or say in) Burt's treatment.[4] *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (holding that a continuing violation runs only for as long as the defendant has "the power to do something about [the inmate's] condition."); *Jones v. Feinerman,* No. 09 C 3916, 2011 WL 4501405, at *4 (N.D. Ill. Sep. 28, 2011) ("The series of violations Jones alleges against Feinerman terminated when Feinerman no longer had the power to do something about Jones's condition . . . [which] occurred in late 2005, when Jones was transferred to another IDOC facility and out of Feinerman's care.") *Ozoroski v. Maue*, No. 1:08-CV-82, 2011 WL 1304607, at *14 (M.D. Pa. Feb. 14, 2011), *report and recommendation adopted in part, rejected in part* 2011 WL 1304603 (Mar. 31, 2011), *aff'd*, 460 Fed. App'x 94 (3d Cir. 2011) ("[W]e do not believe that the Court of Appeals would find that the [continuing violation] doctrine should reasonably be applied to discrete defendants, operating at different times and in different places, and—in particular—to periods during which defendants were in no position to provide

---

[4] It appears that the only communication between the institutions was through notes in Burt's medical record. There is nothing in the record that suggests Menard and Stateville prison officials coordinated a treatment plan for Burt or reached any agreement about how to treat him.

the requested medical services to an inmate."); *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) (finding no continuing violation for denial of adequate medical treatment when defendants were at three different correctional facilities and there was no evidence of a coordinated plan).

Furthermore, the undersigned cannot fathom how the August 23rd grievance, which was initiated and fully exhausted while Burt was at Menard and only involved the denial of medical care at that institution, could have possibly put Stateville officials on notice that Burt was allegedly receiving inadequate medical care at their facility. In fact, Burt did not cite to, and the Court is unaware of, any case where a previously filed and completely exhausted grievance was sufficient to exhaust future incidents that occurred at a different institution. Simply put, Burt cannot rely on the August 23rd grievance to exhaust his claims for the denial of medical care that occurred at a wholly different location and involved completely different individuals operating under different circumstances.[5] *See Pinson v. St. John*, No. 1:10-CV-01832-RBP, 2013 WL 765639, at *1 (N.D. Ala. Feb. 25, 2013); *Sanders v. Williams*, No. CIV 08-0895 JB/WPL, 2010 WL 1631767, at *14 (D.N.M. Mar. 20, 2010). In sum, the August 23rd grievance was insufficient to exhaust Burt's administrative remedies regarding the denial of medical care he allegedly experienced at Stateville between February 2011 and April 2012.

The same is true for the denial of medical care that Burt allegedly experienced after he returned to Menard in April 2012. By that time, it had been at least nineteen months since the August 23rd grievance was initiated, approximately fifteen months

---

[5] There is no indication in the record that the denial of medical care Burt allegedly experienced at Stateville was in any way related to lockdowns.

since it had been fully exhausted, and fourteen months since Burt had last been at Menard. Given the remoteness in time, it simply cannot be said that the inadequate treatment Burt received after he returned to Menard was part of the same series of events as the inadequate treatment he received during his first stint there.[6] It also cannot be said that prison officials were already on notice of the issue; too much time had gone by for the August 23rd grievance to alert Menard officials that inadequate treatment might occur in the future once Burt returned to their facility. *See Howard v. Wade*, 534 F.3d at 1244–45 (holding plaintiff's earlier grievances regarding risks to his safety in one section of the prison were not sufficient to "put prison officials on notice" of intimidation that occurred in another part of the prison some months later); *Johnson,* 385 F.3d at 521 n. 13 ("Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents."); *Guzman v. Vatani*, No. CIV.A. H-12-2031, 2013 WL 2482910, at *4 (S.D. Tex. June 10, 2013).

In sum, the August 23rd grievance exhausted only Burt's claims for deliberate indifference up to February 18, 2011, the date he was transferred to Stateville. In order to exhaust his administrative remedies for any incident of deliberate indifference that

---

[6] That is particularly true because the medical records indicate that Burt received the exact treatment that he claimed he was denied during his first stint at Menard—a prescription for pain reliever—on at least four occasions thereafter. *Jervis v. Mitcheff*, 258 Fed.App'x. 3, 5 (7th Cir. 2007) (instructing that a continuing violation for deliberate indifference to a serious medical need ends "when treatment is provided." (citing *Heard*, 253 F.3d at 318–19)). Burt was given a three-month prescription for Motrin on August 24, 2011, while he was housed at Stateville (Doc. 69-11, p. 2). After he returned to Menard, he received a three-week prescription for Motrin on November 3, 2012 (Doc. 69-11, p. 17); a two-month prescription for Motrin on December 1, 2012 (*Id.* at p. 18); and a four-month prescription for Motrin on July 17, 2013 (*Id.* at p. 30; *see also* p. 31). His predominant complaint regarding the denial of adequate medical treatment during his second stint at Menard was not that he was denied pain reliever, but that he was denied a referral to a specialist and surgery (*see* Doc. 1).

occurred after his transfer to Stateville, Burt was required to file a separate grievance. Unfortunately for Burt, even if some of the named Defendants were responsible for the deliberate indifference covered by the August 23rd grievance, those claims are time-barred.[7] Consequently, the August 23rd grievance gets him nowhere.

Accordingly, the undersigned adopts Magistrate Judge Wilkerson's conclusion that the August 23, 2010 grievance is insufficient to exhaust Burt's claims of deliberate indifference as to any of the Defendants.

**B. October 23, 2012 Grievance**

In this grievance, Burt complained that he was repeatedly deprived of his pain reliever at Menard. Burt's counselor responded on January 14, 2013. There is no response in the record from either the warden or the Administrative Review Board. Burt, however, asserted that he submitted the grievance to the grievance officer within a few days of receiving his counselor's response on January 14, 2013, but he never received a response. Magistrate Judge Wilkerson found Burt's assertion credible (Doc. 99, p. 5). He concluded that the warden's failure to respond rendered the grievance process unavailable to Burt, and thus Burt was deemed to have fully exhausted the October 23rd grievance (*Id.* at p. 15). Magistrate Judge Wilkerson further concluded, however, that the October 23rd grievance only covered Defendants Samuel Nwaobasi and Jane Doe #1.

Burt objects to the conclusion that the grievance only covered two Defendants. Burt contends that Magistrate Judge Wilkerson's analysis should have ended with his

---

[7] The Administrative Review Board responded to Burt's August 23rd grievance on January 3, 2011 (Doc. 80-3), and he had to file suit within the two year statute of limitations (by January 3, 2013). But Burt did not file suit until August 5, 2013, which was seven months after the period of limitations expired.

determination that the grievance process was unavailable to Burt (Doc. 100, p. 14–15). He claims that once the exhaustion process becomes unavailable, the contents of a plaintiff's grievance, including the identities of those involved, are unimportant (*Id.*).

Burt is incorrect. A finding that the grievance process was unavailable, and therefore the grievance was deemed exhausted, does not mean that all of Burt's claims as to all Defendants are automatically exhausted, as Burt seemingly implies. Rather, only the claims implicated by the grievance are exhausted. Therefore, Magistrate Judge Wilkerson had to determine which Defendants and/or claims the October 23rd grievance covered. Burt did not argue or provide an explanation as to why Magistrate Judge Wilkerson was wrong in concluding that the October 23rd grievance implicated only Samuel Nwaobasi and Jane Doe #1. Accordingly, the undersigned adopts the findings of fact and conclusions of law contained in the Report and Recommendation regarding the October 23, 2012 grievance.

C. Conspiracy Claim

Magistrate Judge Wilkerson concluded that neither the August 23, 2010 grievance nor the October 23, 2012 grievance exhausted Burt's conspiracy claim (Doc. 99, pp. 14, 16). He stated that "there must be enough information provided [in the grievance] to put the institution on notice that several of its employees were conspiring together to prevent Plaintiff from receiving adequate medical treatment" (*Id.* at p. 14). Magistrate Judge Wilkerson found that neither grievance alluded to, much less outright asserted, the existence of a conspiracy.

Burt objected to this conclusion, arguing that Defendants never raised any

challenge to the conspiracy claim, directly or indirectly, in the motions for summary judgment or at the *Pavey* hearing (Doc. 100, pp. 3, 4). Burt claims that he has been "blindsided by this issue" (*Id.* at p. 16).

While Defendants did not argue that the conspiracy claim should be dismissed for failure to exhaust, the Court can still grant summary judgment on that issue after giving Burt notice and a reasonable time to respond. FED. R. CIV. P. 56(f). The Report and Recommendation did just that—it alerted Burt to the possibility that summary judgment may be granted against him on the conspiracy claim, and he had sufficient time to respond to Magistrate Judge Wilkerson's recommendation. And Burt, in fact, took the opportunity to object to that recommendation. He points out that the October 23, 2012 grievance alleges "the staff is deliberately and blatantly denying me my medication," which he implies is sufficient to put Menard on notice of a conspiracy (*Id.*).

Burt's argument is unavailing. His grievance needed to alert prison officials to the "nature of the wrong." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Merely stating that "the staff is deliberately and blatantly denying me my medication," did not give sufficient notice to prison officials that Burt was contending correctional officers and medical staff at Menard were working together with Stateville staff members to achieve the express goal of denying him medical care. At most, the grievance alerts officials that Burt was denied care by more than one member of the medical staff. But it does nothing to induce the reader to consider that the denial of medical care was perhaps the result of a premediated, multi-institution plan involving both correctional officers and medical staff. A review of Burt's other correspondence to the healthcare unit further convinces

the undersigned that Burt failed to give notice of his conspiracy claim. For two weeks prior to the October 23rd grievance, and six months afterwards, Burt sent at least six letters to the doctor and Angela Crain (Doc. 1, pp. 15, 19–23). He never once mentioned or implied the existence of a conspiracy (*see id.*).

Accordingly, the undersigned adopts the findings of fact and conclusions of law contained in the Report and Recommendation regarding Burt's conspiracy claim. That claim will be dismissed for failure to exhaust.

### CONCLUSION

Plaintiff Ronald Burt's objections to the Amended Report and Recommendation (Doc. 164) are **OVERRULED**, and the Court **ADOPTS** Magistrate Judge Wilkerson's Amended Report and Recommendation (Doc. 158). The motions for summary judgment on the issue of exhaustion (Docs. 122, 132) are **GRANTED in part and DENIED in part**. Defendants Joshua Berner, Angela Crain, Daniel Dunn, Vicki Payne, John Doe #2, and John Doe #10 are **DISMISSED without prejudice.** Count 4 for civil conspiracy is **DISMISSED without prejudice**. Defendants Fe Fuentes and Latanya Williams are also **DISMISSED without prejudice** based on Burt's stipulations at the *Pavey* hearing.

This action will proceed only on Count 1 against Defendants Samuel Nwaobasi, Jane Doe #1, and Richard Harrington.

**IT IS SO ORDERED.**

DATED: April 14, 2015

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**