IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RONALD BURT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-CV-794-NJR-DGW** |
| | ) | |
| **RICK HARRINGTON,** | ) | |
| **SAM NWAOBASI, ANGELA CRAIN,** | ) | |
| **MICHAEL MOLDENHAUER,** | ) | |
| **LAKESHA HAMBY, DR. JOHN TROST,** | ) | |
| **CHAD FRIERDICH, and** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Currently pending before the Court is the motion for summary judgment on the issue of exhaustion filed by Defendants Lakesha Hamby, Michael Moldenhauer, John Trost, and Wexford Health Sources, Inc. ("Wexford") (Doc. 156). Based on the parties' representations, the Court has determined there are no material facts in dispute and thus the motion can be resolved without a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (*See* Docs. 183, 184). For the reasons set forth below, the motion is granted in part and denied in part.

### PROCEDURAL BACKGROUND

Plaintiff, Ronald Burt, is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). He suffers degeneration of his cervical spine as a result of an unspecified injury, which causes severe and chronic neck and back pain (Doc. 1, p. 3;

Doc. 80-1). Plaintiff filed this action on August 5, 2013, alleging that various employees of the IDOC and Wexford, at both Menard and Stateville Correctional Centers, were deliberately indifferent to his medical needs and engaged in a civil conspiracy to deny him adequate medical treatment (Doc. 1; Doc. 13).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A (Doc. 13) and one round of summary judgment motions on the issue of exhaustion (Docs. 99, 102), this matter proceeded only on Plaintiff's Eighth Amendment claim for deliberate indifference against Samuel Nwaobasi, Jane Doe # 1, and Richard Harrington (Doc. 102). Several months later, Plaintiff was permitted to file an amended complaint, identifying Jane Doe #1 as Chad Frierdich, renaming Angela Crain as a Defendant, and adding Michael Moldenhauer, Lakesha Hamby, Dr. John Trost, and Wexford Health Sources, Inc. as Defendants (Doc. 124, Doc. 125).[1]  At this point, Plaintiff is proceeding on an Eighth Amendment claim for deliberate indifference against Dr. Nwaobasi, Chad Frierdich, Harrington, Crain, Moldenhauer, Hamby, Dr. Trost, and Wexford. (Doc. 158).

After Plaintiff amended his complaint, a second round of summary judgment motions on the issue of exhaustion was authorized for the newly-added Defendants (*see* Doc. 138). Defendants Moldenhauer, Trost, Hamby, and Wexford filed their motion on March 7, 2016 (Doc. 156).[2]  Plaintiff filed a response in opposition to the motion (Doc. 171), to which Defendants filed a reply (Doc. 174).

---

[1] On March 8, 2016, Plaintiff filed a second amended complaint (Doc. 158). The second amended complaint only changed the spelling of Wexford Health Sources, Inc. and did not modify the substance of a previously filed amended complaint (Doc. 125).

[2] The pending motion for summary judgment was filed after the amended complaint (Doc. 125) but before the second amended complaint (Doc. 158). As mentioned in the previous footnote, very limited changes were made in the second amended complaint, and therefore, the Court finds that the arguments made in the motion for summary judgment still apply with equal force.

## FACTUAL BACKGROUND

In order to provide context for the motion for summary judgment, the factual basis for Plaintiff's claims against Defendants Moldenhauer, Hamby, Trost, and Wexford is taken from the pleadings and the evidence submitted during the summary judgment proceedings and outlined here. The relevant grievance history, however, is outlined in the discussion section of this Order.

Plaintiff alleges that he suffers from "continuous, severe and excruciating back and neck," and he has not been given proper medical treatment for his condition since at least 2007 (Doc. 158). He generally alleges that each Defendant, at one time or another, was responsible for the constitutionally inadequate medical treatment that he received by failing to adequately asses his condition, refusing to provide him with proper medication to manage with his severe pain, refusing him the opportunity to be examined and treated by physicians outside of the IDOC system, and/or refusing him surgery to cure his serious neck and back problems (Doc. 158). His specific allegations with regard to the moving Defendants are as follows.

Defendant Wexford Health Sources, Inc. is a private company that contracts with the IDOC to provide medical services and healthcare personnel at IDOC facilities (Doc. 158; Doc. 164). According to Plaintiff, Wexford maintains a policy of refusing to order necessary treatments in an effort to save money, and this policy is "the moving force" behind the constitutionally inadequate care he received at Stateville and Menard (Doc. 158).

Defendant Michael Moldenhauer was a Physicians' Assistant/Nurse Practitioner

employed by Wexford at Menard (Doc. 158; Doc. 165). Plaintiff alleges that he saw

Moldenhauer on July 17, 2013, and

> was given a cursory examination by Moldenhauer, who noted [Plaintiff's]
> chronic back pain. Moldenhauer claims to have discussed [Plaintiff's]
> x-rays with him. Despite [Plaintiff's] continuing severe back and neck pain,
> he was not seen by a doctor and Moldenhauer's only recommendation was
> the reduced prescription of Motrin Mr. Burt had received in the past that
> did nothing to help or cure his serious medical needs or end his
> excruciating pain.

(Doc. 158).

Defendant Lakesha Hamby was a registered nurse employed by Wexford at

Menard (Doc. 158; Doc. 166). Plaintiff alleges that he saw Nurse Hamby on November

26, 2013, for his neck and back pain (Doc. 158). Plaintiff further states,

> The medical records indicate constant, continuing, burning pain in his
> neck and back. Despite the obvious nature of [Plaintiff's] serious medical
> problems, the only action Hamby took was to continue the pain
> medication [Plaintiff] had been on, which had not helped his condition.
> Hamby noted [Plaintiff]. Burt should see a medical doctor if his pain was
> ongoing, but did not schedule [him] to see a medical doctor, even though
> [his] pain was ongoing.

(Doc. 158).

Defendant John Trost was a medical doctor employed by Wexford at Menard

(Doc. 158; Doc. 163). Plaintiff generally alleges that Trost refused to provide him with

prescribed pain medication and denied him any other kind of medical treatment (Doc.

158, ¶32). Plaintiff more specifically alleges that he was seen by Dr. Trost on December

24, 2013, and "Trost noted [Plaintiff] is suffering from narrowing of his vertebrates as a

result of a degenerative spinal disease. Despite the obvious nature of [Plaintiff's] serious

medical needs, Trost prescribed nothing more than exercises and meloxicam." (Doc. 158, ¶54).

**APPLICABLE LEGAL STANDARDS**

**A. Summary Judgment**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

**B. Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies through the prison's grievance process before filing a civil rights suit pertaining to prison conditions. 42 U.S.C. § 1997e(a); *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

"The exhaustion requirement is interpreted strictly; thus, a 'prisoner must comply

with the specific procedures and deadlines established by the prison's policy.'" *Pyles*, 829 F.3d at 864 (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). As an inmate confined in the Illinois Department of Corrections, Plaintiff was required to follow the three-step process outlined in the Illinois Administrative Code. *Pyles*, 829 F.23d at 864 ("State law determines the administrative remedies that a state prisoner must exhaust for PLRA purposes."). First, an inmate must attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE, title 20, § 504.810(a). If the complaint is not resolved, the inmate must submit a written grievance to the grievance officer. *Id.* at § 504.810(b). The grievance must include "factual details regarding each aspect" of a detainee's complaint and also name, or at least describe, "each person who is the subject of or who is otherwise involved in the complaint." *Id.*

The grievance is then considered by the grievance officer and the chief administrative officer at the facility (usually the warden), who must issue a decision within two months of receiving the grievance "where reasonably feasible under the circumstances." *Id.* at § 504.830(d). If the inmate is unsatisfied with the chief administrative officer's decision, he can appeal to the Administrative Review Board for a final determination from the director of the IDOC. *Id.* at 504.850(a). The appeal must be filed within 30 days of the date of the chief administrative officer's decision. *Id.*

## DISCUSSION

The parties focus their arguments on three grievances dated May 16, 2013, October 7, 2013, and November 26, 2013 (*see* Docs. 156, 171, 174). Plaintiff also notes that there are other relevant grievances, however, namely those dated October 23, 2012, and

September 25, 2014 (Doc. 171). The Court will describe and analyze each grievance separately and in chronological order.

## A. Grievance dated October 23, 2012

In this grievance, Plaintiff complained in pertinent part that his requests to "the medical doctor" for a refill of his prescription for Motrin repeatedly went unanswered (Doc. 80-2). He indicated that he was in continuous pain, and if he was not going to get his pain medication, the prison should schedule him for "the proper surgery to end the chronic pain" (Doc. 80-2). The Court previously addressed this grievance and determined that the warden failed to respond to it, which rendered the grievance process unavailable to Plaintiff (Doc. 99; Doc. 102). Thus Plaintiff was deemed to have fully exhausted his administrative remedies with respect to this grievance (Doc. 99; Doc. 102).

The Court must now determine whether the grievance covers Plaintiff's claims against the moving Defendants. With respect to Wexford, the grievance does not mention or even hint at any policy or practice (*see* Doc. 80-2), and is therefore insufficient to exhaust Plaintiff's claim against Wexford. As for Moldenhauer, Hamby, and Trost, the grievance does not name or describe any of them (*see* Doc. 80-2). While the Illinois Administrative Code mandates that grievances include the name or a description of the persons involved in the complaint, ILL. ADMIN. CODE, title 20, § 504.810(b), the grievance form Plaintiff used asked only for a "Brief Summary of Grievance" (Doc. 80-2). In this circumstance, the Seventh Circuit has held that "the omission of names or identifying information does not necessarily mean that the prisoner failed to exhaust his

administrative remedies . . . ." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) (citing *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011)); *Jackson v. Shepherd*, 552 F. App'x 591, 593 n.1 (7th Cir. 2014).

But there is another problem, however, with using the October 2012 grievance to exhaust Plaintiff's claims against Moldenhauer, Hamby, and Trost:   there is no evidence that any of them treated Plaintiff or had any interaction with him prior to the submission of this grievance (*see* Docs. 157, 171).[3] Common sense thus dictates that this grievance could not have challenged Moldenhauer, Hamby, or Trost's conduct nor could it possibly have alerted prison officials to any shortcomings in the care they provided. *See Palmer v. Fenoglio*, 510 F. App'x 476, 478 (7th Cir. 2013) (affirming conclusion that grievance did not challenge doctor's conduct when the evidence showed doctor did not interact with prisoner until after prisoner filed his grievances); *Mayo v. Snyder*, 166 F. App'x 845, 848 (7th Cir. 2006) (affirming prisoner failed to exhaust as to doctor and nurses "because he filed his grievance before he was ever seen by these medical personnel. . . . [I]n no way could [prisoner's] December 2 grievance be construed to object to medical treatment he would subsequently receive."); *Zirko v. Ghosh*, No. 10 C 08135, 2015 WL 6447768, at *9 (N.D. Ill. Oct. 26, 2015) (concluding grievance could not

---

[3] Evidence in other prisoner lawsuits in this District indicates that Dr. Trost did not start working at Menard until November 25, 2013. *Barrow v. Wexford Health Sources, Inc.*, No. 14-CV-800-NJR-DGW, 2015 WL 5010104, at *1 (S.D. Ill. Aug. 24, 2015); *Spears v. Shearing*, No. 14-CV-00811-JPG-PMF, 2015 WL 4273131, at *2 (S.D. Ill. July 14, 2015).

exhaust claims against doctor who started working at prison and treating inmate's back pain sixteen months after grievance was filed).

Plaintiff insists, however, that this grievance can be used to exhaust for future events involving Moldenhauer, Hamby, and Trost under the continuing violation doctrine (*see* Doc. 171). The Court disagrees. A previously submitted grievance can suffice to exhaust for subsequent events where the staff has been made aware of and given the opportunity to correct the problem, but the problem continues unabated. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing."). *See also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008); *Johnson v. Johnson,* 385 F.3d 503, 521 (5th Cir. 2004).

Here, Plaintiff indicated in his grievance that he wanted Motrin (Doc. 80-2). The evidence indicates that on November 3, 2012, within days of filing his grievance, Plaintiff received a three-week prescription for Motrin (Doc. 69-11, p. 17; Doc. 80-2, p. 3). On December 1, 2012, he received a two-month prescription for an increased dosage of Motrin (Doc. 69-11, p. 18; Doc. 80-2, p. 3). Thus the prison corrected the problem that Plaintiff complained about and the concerns he expressed in the grievance about a lack of treatment were ostensibly addressed. While Plaintiff now maintains that the Motrin "never eliminated the excruciating pain" (Doc. 158), there is simply nothing in the grievance that suggests he was complaining that the Motrin was ineffective (*see*

Doc. 80-2). Therefore, the grievance could not possibly have alerted prison officials that medical providers were persisting in an ineffective course of treatment and that further corrective action was needed after November 3rd. Consequently, Plaintiff cannot rely on the October 2012 grievance to cover purported incidents involving Moldenhauer, Hamby, and Trost that occurred at least eight months after the visit on November 3rd. *See Zirko*, 2015 WL 6447768, at *10 (reasoning that grievance for inadequate medical treatment "must be deemed to have a shelf life that continues at least until some further action has been taken to address the situation giving rise to the grievance" and concluding that grievance filed in February 2010 regarding failure to treat back pain could not exhaust any claims after March 3, 2010, when plaintiff received medication, a back brace, and x-rays of his spine). *See also Jervis v. Mitcheff*, 258 F. App'x 3, 5–6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided . . . .") (citing *Heard v. Sheahan*, 253 F.3d 316, 318–19 (7th Cir. 2001))).

In sum, the October 2012 grievance is insufficient to exhaust Plaintiff's claims against Hamby, Moldenhauer, Trost, or Wexford.

## B.  Grievance dated May 16, 2013

In this grievance, Plaintiff complained that he had made repeated requests to see Dr. Nwaobasi to get his Motrin renewed, his lotion and analgesic balm renewed, a prescription for medicated shampoo, and to review his x-ray results, but his requests were ignored (Doc. 157-1). Plaintiff once again insisted that if he was not going to get the

medications he needed the prison should schedule him for "the proper neck surgery to take away my chronic pain" (*Id.*). Plaintiff then goes on to list a litany of other complaints related to dental care, eye care, nutrition, and Hepatitis C treatment (Doc. 157-1).

Plaintiff's counselor received this grievance on May 18, 2013, but did not respond until October 28, 2013 (after receiving a memorandum dated October 25, 2013, from Angela Crain) (Doc. 157-1). Plaintiff then submitted it to the grievance officer, who received it on November 18, 2013, and recommended that it be denied on the merits (Doc. 157-2). The warden concurred on December 24, 2013, and Plaintiff appealed to the ARB on December 29, 2013 (Doc. 157-2). The ARB denied the grievance on the merits, finding that the "issue was appropriately addressed by the facility Administration" (Doc. 157-3). The evidence demonstrates that Plaintiff completed the grievance process and therefore the Court concludes that he exhausted his administrative remedies with respect to this grievance.

This grievance does not cover Plaintiff's claims against Wexford, however, because it does not mention or even hint at any Wexford policy or practice (*see* Doc. 157-1). With respect to Moldenhauer, Hamby, and Trost, the grievance does not name or describe any of them (*see* Doc. 157-1), but once again this does not doom Plaintiff, because the grievance form he used asked only for a "Brief Summary of Grievance." But this grievance faces the same problem as the previous grievance in that it predates any involvement Moldenhauer, Hamby, and Trost had with Plaintiff. Consequently, this grievance can cover Plaintiff's claims against Moldenhauer, Hamby,

and Trost only if Plaintiff went without treatment until the time he saw them and they also did nothing for him. The medical records, however, show that was not the case.

The medical records indicate that Plaintiff saw Moldenhauer on July 17, 2013, for a follow-up for his back pain (Doc. 171-2). Moldenhauer discussed the results of Plaintiff's spinal x-ray with him, tested his range of motion, and then prescribed a four-month supply of Motrin (*Id.*). Plaintiff then saw Dr. Shearing three weeks later, and his prescription for Motrin was continued (Doc. 171-2, p. 1; *see also* Doc. 157-1).[4]  In other words, Plaintiff indicated in his grievance that he wanted Motrin and to know the results of his spinal x-ray, and he got both of those things when he saw Moldenhauer on July 17th. Thus the prison corrected the problem that Plaintiff complained about in his grievance by giving him exactly what he demanded. While Plaintiff now maintains that the Motrin was ineffective and Moldenhauer was deliberately indifferent for prescribing it (Doc. 158), this grievance cannot fairly be read to alert prison officials that the treatment prescribed by Moldenhauer on July 17th was somehow deficient or that further corrective action was needed after that date. Therefore, Plaintiff cannot rely on this grievance to cover his claim against Moldenhauer arising out of the July 17th visit or the purported incidents involving Hamby and Trost that occurred at least four months after the July 17th visit.

In sum, the May 2013 grievance is insufficient to exhaust Plaintiff's claims against Hamby, Moldenhauer, Trost, or Wexford.

---

[4] Plaintiff also complained of a skin rash and requested Lubriderm lotion (Doc. 157-1) Although no rash was observed, Moldenhauer nevertheless referred Plaintiff to the medical doctor for the lotion (*Id.*).

**C.  Grievance dated October 7, 2013**

In this grievance, Plaintiff complained in pertinent part that he had not received copies of his cervical spine x-ray that he needed for a lawsuit and that he had been refused his pain pills that he had been requesting for five days since he was transferred back to Menard from "court" (Doc. 157-4).[5] Plaintiff did not name any particular person in this grievance (*see* Doc. 157-4).

Plaintiff's counselor responded to the grievance on October 28, 2013. The grievance officer recommended denying the grievance on December 16, 2013, and the warden concurred on December 17, 2013 (Docs. 157-4, 157-5). Plaintiff appealed to the ARB on December 27, 2013, but it was not received by the ARB until January 24, 2014 (Docs. 157-5, 157-6). The ARB responded to the appeal on June 24, 2014, rejecting it as untimely without addressing the merits (Doc. 157-6).

The Illinois Administrative Code requires an appeal to be filed within 30 days of the warden's decision; Plaintiff's appeal was not received by the ARB until 39 days after the warden's response. In an affidavit, Plaintiff stated that he would typically submit grievances for an appeal within a week of receipt of the warden's response (Doc. 171-1, p. 2). The grievance itself indicates that Plaintiff submitted his appeal ten days after the warden's decision (Doc. 157-5; *see also Doc.* 157-6). Defendants, in their reply brief, state that Plaintiff's appeals to the ARB were untimely, but they do not dispute Plaintiff's affidavit or provide contrary evidence that would necessitate a hearing to assess

---

[5] The record indicates that Plaintiff was transferred on a writ around September 13, 2013, and returned to Menard around October 2, 2013 (*See* Doc. 171, p. 6, ¶ 14; Doc. 171-3, p. 1). Upon his return, he apparently did not automatically resume receiving the Motrin that was previously prescribed to him in July by Moldenhauer (*see* Doc. 171-2, p. 1).

credibility (*see* Doc. 174).

For some inexplicable reason, it took 28 days for the appeal to get from Plaintiff to its destination, which far exceeds any normal expectation for intrastate mail delivery time. Thus the evidence suggests that Plaintiff submitted the appeal within the correct timeframe and did everything within his power to comply with the grievance process, but for reasons beyond his control, the appeal did not reach the ARB until more than 30 days after the date of the warden's decision. Because his appeal was submitted within the 30-day period, the appeal was timely, and Plaintiff is deemed to have exhausted this grievance.[6]

Once again, however, this grievance does not cover Plaintiff's claim against Wexford because it does not mention or even hint at any Wexford policy or practice (*see* Doc. 157-4). The grievance also does not name or describe Moldenhauer, Hamby, or Trost (*see* Doc. 157-4). Unlike the previous grievances, this one was written on a form that explicitly instructed Plaintiff to "provide information including a description of

---

[6] *See Roman v. Talbot*, No. 14-2017, 2014 WL 5607767, at *1 (C.D. Ill. Nov. 4, 2014) (finding grievance was fully exhausted when prisoner placed appeal to ARB in the mail "well within the 30 day deadline" but the ARB did not receive it until over a month after it was mailed); *Gevas v. McCann*, No. 08 C 3074, 2014 WL 2922722, at *2 (N.D. Ill. June 27, 2014) (expressing doubt that appeal was late when it was "submitted" but not received by the ARB within the 30-day window); *Jaros v. Illinois Dep't of Corr.*, No. 11-CV-168-JPG, 2013 WL 5546189, at *3 (S.D. Ill. Oct. 8, 2013) (stating that ARB demanded the prisoner do more than the administrative rules require by denying appeal as untimely when it was submitted by the prisoner before the 30-day deadline but not received by the ARB until after the deadline); *Dewalt v. Pitts*, No. 12-CV-118-MJR-SCW, 2013 WL 4051704, at *5 (S.D. Ill. Aug. 11, 2013) (adopting recommendation that grievance was exhausted even though the ARB received the appeal one day late because appeal was mailed prior to thirty-day deadline and it "is deemed submitted the day that it was mailed"); *Lang Vo Tran v. Illinois Dep't of Corr.*, No. CIV. 09-302-GPM, 2011 WL 816630, at *9 (S.D. Ill. Mar. 1, 2011) (finding prisoner exhausted grievance when appeal was submitted but not received by the ARB within the 30-day window); *Schadel v. Evans*, Case No. 09–1338, 2010 WL 2696456, at * 2 (C.D. Ill. July 7, 2010) (finding appeal was timely when it was placed in the mail one day before the thirty-day deadline). *See also Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) ("And though the defendants would like us to presume that § 504.850 and the ARB's own procedures do not recognize the "mailbox rule," they offered no support (and still don't) for the proposition."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner had filed a timely appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB).

what happened, when and where it happened, and the name or identifying information for each person involved" (Doc. 157-4). Furthermore, the information contained in the grievance does not in any way indicate that Moldenhauer, Hamby, or Trost was the target of the grievance. Consequently, the Court believes that this grievance has a "fatal defect" and does not cover Plaintiff's claims against Moldenhauer, Hamby, and Trost. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was it "neither mentioned (defendant) by name nor provided information that should have identified him to the grievance officer."); *Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

Even if the failure to name or implicate Moldenhauer, Hamby, and Trost did not doom this grievance, there are other reasons that it cannot be deemed to exhaust Plaintiff's claims. First, this grievance cannot cover Moldenhauer's conduct because there is nothing in the record that suggests he had any interaction with Plaintiff following the July 17th visit, which was approximately two and half months before Plaintiff submitted this grievance. *See* ILL. ADMIN. CODE title 20, § 504.810(a) (requiring inmates to file a grievance within sixty days of the complained of event or incident). Second, this grievance cannot cover Hamby and Trost's conduct because it predates their involvement with Plaintiff, and Plaintiff's requests were addressed before they saw him. Specifically, the record indicates that Plaintiff received his Motrin on October 21, 2013, and his request for copies of his x-rays was forwarded to the records department by

October 25, 2013, at the latest (*see* Doc. 157-4). Therefore, it cannot reasonably be said that the October 2013 grievance alerted prison officials to the need for further corrective action after October 25th, and Plaintiff cannot rely on this grievance to cover purported incidents during the following two months involving Hamby and Trost.

For these reasons, the October 2013 grievance is insufficient to exhaust Plaintiff's claims against Hamby, Moldenhauer, Trost, or Wexford.

## D.  Grievance dated November 26, 2013

In this grievance, Plaintiff began by stating that he had sent a "kite/note" to Angela Crain and Michael Moldenhauer because he was "being refused to be seen" (Doc. 157-7). He was taken to see an RN or a MedTech about that kite on November 26, 2013, and he was charged a $5 copay for the visit (Doc. 157-7). Plaintiff insisted that his neck/spinal problem was an ongoing, chronic condition so he should not have to pay a copay each time he was seen for that condition (*Id.*). He explicitly stated that "Wexford is refusing me the proper treatment and committing a crime because inmates are not to keep being billed med fees for chronic illness[.]" (*Id.*). He also protested the IDOC and Wexford forcing inmates to be seen at separate visits for each illness or condition, for follow-up visits, and for chronic medical problems and then charging a copay for each of those visits (*Id.*). He complained that making inmates file separate slips "for each and every problem" was just a way for the IDOC and Wexford to rack up copays, which amounted to "racketeering and extortion" (*Id.*). At the end of the grievance, Plaintiff tacked on another complaint that an incorrect x-ray was ordered; he claimed his cervical

spine was supposed to be x-rayed, not his lumbar spine (*Id.*).[7]

Plaintiff's counselor received this grievance on December 3, 2013, and responded on December 23, 2013 (Doc. 157-7). Plaintiff then submitted it to the grievance officer, who received it on January 10, 2014, and recommended that it be denied on the merits (Doc. 157-8). The warden concurred on January 30, 2014 (Doc. 157-8). Plaintiff appealed to the ARB on March 19, 2014, and his appeal included a note that said, "I just got this in the mail today!" (Doc. 157-8). The ARB received the grievance on March 24, 2014, and rejected it as untimely without addressing the merits (Doc. 157-9).

Once again, the Illinois Administrative Code requires an appeal to be filed within 30 days of the warden's decision, and Plaintiff's appeal was not received by the ARB until 48 days after the warden's response. Notably, however, it is undisputed that Plaintiff did not receive the warden's decision until 38 days after it was signed. So it was impossible for him to appeal to the ARB before the expiration of the 30-day deadline. The Court concludes that the grievance process was rendered unavailable through no fault of Plaintiff's by the lag between the time the warden issued his decision and the time Plaintiff received it. Therefore, this grievance is deemed exhausted.

The Court must now determine whether this grievance covers Plaintiff's claims against the moving Defendants. Turning first to Trost, the grievance does not name or describe him despite the instruction on the form used by Plaintiff to provide "the name or identifying information for each person involved" (*see* Doc. 157-7). Additionally, none

---

[7] On March 19, 2014, before Plaintiff submitted his appeal to the ARB, he added an additional paragraph to the grievance that stated he should not have to request to see a doctor to have his prescriptions refilled because it should happen automatically, that he wants to see a specialist, and that his pain should be dealt with effectively (Doc. 157-7). Because these additional complaints/requests were not originally in Plaintiff's grievance, they were not presented at the institutional level and therefore those claims are not considered exhausted by this Court.

of the information contained in the grievance suggests that Plaintiff was complaining about Trost's conduct (*see id.*). For these reasons, the Court finds that the November 2013 grievance is insufficient to exhaust Plaintiff's claim against Trost.

The Court next turns to Moldenhauer and Hamby. The grievance mentions Moldenhauer by name, stating that Plaintiff sent a note to Moldenhauer "since I'm being refused to be seen" (Doc. 157-7). As for Hamby, the grievance does not name her, but it does mention that Plaintiff saw an "RN or MedTech" that day about the note, and the medical records indicate it was Hamby (Doc. 157-7; Doc. 158, ¶52; *see also* Doc. 69-11, p. 36). Nothing in the grievance, however, even remotely suggests that Plaintiff was complaining about the care Hamby provided (*see* Doc. 157-7). Nor does it suggest that Moldenhauer was the one refusing to see Plaintiff or otherwise failing to provide medical care (*Id.*). As best the Court can tell, Moldenhauer and Hamby were simply mentioned in passing to provide background and context for Plaintiff's complaint. And Plaintiff's complaint, as he explicitly stated, was about "being billed for a chronic spinal (neck) problem" (Doc. 157-7). Based on that statement and the summary he provided, prison officials naturally inferred that Plaintiff was complaining about the copays he was forced to pay (*see* Doc. 157-7, p. 3 and Doc. 157-8). Simply put, it cannot reasonably be said that this grievance alerted prison officials to any shortcomings in the care provided by Moldenhauer or Hamby. Therefore, the November 2013 grievance is insufficient to exhaust Plaintiff's claim against them.

As for Wexford, the grievance explicitly accuses Wexford of refusing to provide Plaintiff proper treatment and improperly requiring him to pay every time he sought

medical care for his chronic back condition (Doc. 157-7). Plaintiff alleges in his complaint that Wexford has a policy of not providing necessary treatment in an effort to save money (Doc. 158). Thus, the Court thinks this grievance can fairly be read to alert prison officials that Plaintiff was complaining about the alleged Wexford policy or practice at issue—by forcing inmates with chronic conditions to make a copay in order to acquire medication or other treatment, many inmates were compelled to forego treatment, which saved Wexford money. While there may be some disputes as to whose policy is at issue (Wexford's or the IDOC's) and whether Plaintiff may prevail on the merit of such a claim, the November 2013 grievance is nonetheless sufficient to exhaust Plaintiff's claim against Wexford.

To conclude, the November 2013 grievance is sufficient to exhaust Plaintiff's claims against Wexford but not his claims against Hamby, Moldenhauer, or Trost.

**E.  Grievance dated September 25, 2014**

In this grievance, Plaintiff indicates that he sent a "kite" to Dr. Trost stating that he was not called to see the doctor for a refill of his Meloxicam as the doctor promised (Doc. 157-10). Instead, he was called to sick call on September 25, 2014, and told that he would have to pay for his medication renewal because his neck and spine issues are no longer considered chronic conditions (*Id.*). Plaintiff insists that Dr. Trost (and other doctors) previously diagnosed his condition as chronic, but the medical staff disregarded or changed this diagnosis and charged him a copay to receive his pain medication (*Id.*). He also indicates that that medical staff have "flat out refuse[d]" to give him pain medication because it "thin[s] his blood" and he has a "bleeding problem" (*Id.*).

He then requests surgery to alleviate his pain and immobility (*Id.*).

Plaintiff's counselor received this grievance on October 3, 2014, and responded eleven days later (Doc. 157-10). Plaintiff then submitted it to the grievance officer, who received it on November 14, 2014, and recommended that the grievance was moot (Doc. 157-11). The warden concurred on March 19, 2015 (Doc. 157-11). Plaintiff appealed to the ARB on April 16, 2015 (Doc. 157-11). The ARB received the grievance on April 20, 2015, and rejected it as untimely (Doc. 157-12).

The ARB rejected this grievance because it was not received until 32 days after the warden's response and was therefore untimely. But, once again, even though the ARB did not receive the appeal until after the 30-day deadline, Plaintiff submitted it before the deadline expired. Therefore, the appeal was timely, and Plaintiff is deemed to have exhausted this grievance.[8]

The Court must now determine whether this grievance covers Plaintiff's claims against the moving Defendants. The grievance does not name or describe Moldenhauer or Hamby despite the instruction on the form used by Plaintiff to provide "the name or identifying information for each person involved" (*see* Doc. 157-10). Additionally, nothing in Plaintiff's second amended complaint (Doc. 158), his brief in opposition to the motion for summary judgment (Doc. 171), or the exhibits attached to his response (Docs. 171-1 through 171-11) suggest that Moldenhauer or Hamby were the nurses who made him pay a copay for his pain medications or denied him those medications. Therefore, it cannot reasonably be said that this grievance alerted prison officials to any shortcomings in the care provided by Moldenhauer or Hamby, and it is insufficient to exhaust

---

[8] See citations in footnote 6.

Plaintiff's claims against them.

On the other hand, the Court finds the grievance covers Plaintiff's claims against Trost. While the grievance appears to be primarily aimed at the conduct of unnamed "medical staff," it also explicitly mentions that Trost failed to call Plaintiff for a follow-up appointment and failed to renew his pain medication (Doc. 157-10). In his second amended complaint, Plaintiff specifically alleges that Trost provided ineffective treatment on December 24, 2013, but Plaintiff also more generally alleges that Trost refused to provide him with prescribed pain medication and denied him any other kind of medical treatment (Doc. 158). Thus, the Court thinks this grievance can fairly be read to alert prison officials that Plaintiff was complaining about shortcomings in the medical care and treatment he received from Trost. Consequently, the September 2014 grievance is sufficient to exhaust Plaintiff's claim against Trost.

To conclude, the September 2014 grievance is sufficient to exhaust Plaintiff's claims against Dr. Trost, but not his claims against Hamby and Moldenhauer.

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendants Lakesha Hamby, Michael Moldenhauer, John Trost, and Wexford Health Sources, Inc., on March 7, 2016 (Doc. 156) is **GRANTED in part** and **DENIED in part**. Defendants Hamby and Moldenhauer are **DISMISSED without prejudice** for failure to exhaust administrative remedies.

This case will proceed only on a claim of deliberate indifference to serious medical need against Defendants Rick Harrington, Dr. Sam Nwaobasi, Angela Crain, Dr. John Trost, Chad Frierdich, and Wexford Health Sources, Inc. The pending Motions to Dismiss will be considered by separate order.

**IT IS SO ORDERED.**

**DATED:   February 3, 2017**

**NANCY J. ROSENSTENGEL**
**United States District Judge**